UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL C. QUIGLEY, et al.,

           Plaintiffs,

    -against-

THE CITIGROUP SUPPLEMENTAL
PLAN FOR SHEARSON TRANSFERS, and
THE PLANS ADMINISTRATION
COMMITTEE OF CITIGROUP INC., as
Plan Administrator,

           Defendants.

**MEMORANDUM
OPINION & ORDER**

09 Civ. 8944 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), alleging a denial of benefits under the terms of the Citigroup Supplemental Plan for Shearson Transfers (the "Plan"). The Plan and the Plans Administration Committee of Citigroup Inc. (the "Committee," collectively "Defendants") have moved to dismiss, asserting that Plaintiffs have failed to exhaust their administrative remedies under the Plan. The Court has jurisdiction over this matter pursuant to Section 502(e)(1) of ERISA and 28 U.S.C. §1331(a).

        For the reasons stated below, Defendants' motion to dismiss will be granted.

## BACKGROUND

        Plaintiffs are forty-seven former employees of Citigroup, Inc., who are now employed at Morgan Stanley Smith Barney ("MSSB"). (Am. Cmplt. ¶ 5) Plaintiffs are participants in the Plan, which is an ERISA-governed benefit plan, administered by the Committee. (Id.) Citigroup established the Plan on January 1, 2008. (Id. ¶ 6) The Plan is a "Top Hat" plan, which ERISA defines as "a plan which is unfunded and is maintained by an

employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  (Id. (citing 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1))

Effective December 31, 2007, Citigroup froze the benefit accrued by participants in its Cash Balance Defined Benefit Pension Plan ("Cash Balance Plan"), and instead increased contributions to its "Redesigned 401(k) Defined Contribution Plan" ("401(k) Plan").  (Id. ¶ 8) Plaintiffs assert that this action had a "potentially negative impact on the future pension benefits of certain Citigroup employees, including Plaintiffs, who are referred to as 'Shearson Transfers.'"  (Id.)

Under the Plan, a "Shearson Transfer" means a participant in the Citigroup 401(k) Plan who

> (1) was a former employee of Shearson Lehman who transferred to Smith Barney, Harris Upham & Co., Incorporated as of August 1, 1993 or within one year after that date;
>
> (2) is continuously employed by [Citigroup or a Citigroup affiliated company] from August 1, 1993 until the date he or she attains age 65; and
>
> (3) was an eligible participant in The Citigroup Pension Plan as of December 31, 2007 and had his or her accrued benefit under such plan frozen as of such date.

(Decl. of Lewis R. Clayton ("Clayton Decl."), Ex. A, Art. II; Am. Cmplt. ¶ 9)  Because they are highly compensated employees, Plaintiffs assert that a substantial portion of Citigroup's contributions to their 401(k) Plan accounts was prohibited by contribution limitations imposed by Section 415(c) of the Internal Revenue Code, thereby prejudicing Plaintiffs.  (Id. ¶ 10)

I. **THE CITIGROUP SUPPLEMENTAL PLAN FOR SHEARSON TRANSFERS**

The Amended Complaint asserts that Citigroup adopted the Plan, effective January 1, 2008, "in order to compensate Shearson Transfers for the negative impact of the change from the Cash Balance Plan to the 401(k) Plan." (Id. ¶ 11)  The Plan provides for an "excess One-Time Shearson Transfer Supplemental Contribution" to the Plan accounts of Shearson Transfers (the "Excess Benefit"). (Id. ¶ 12)  The "Excess Benefit is payable to eligible Shearson Transfers, namely those who would otherwise suffer a decrease in total retirement benefits at age 65" as a result of the shift from the Cash Balance Plan to the 401(k) Plan. (Id. ¶ 13)  Plaintiffs are all eligible for the Excess Benefit under the Plan. (Id.)

Section 6.01 of the Plan provides:

> While the Company intends to maintain the Plan in conjunction with the Citigroup 401(k) Plan as long as necessary, the Company reserves the right to amend and/or fully or partially terminate the Plan at any time for whatever reasons it may deem appropriate, provided that no amendment or termination of the Plan shall affect any Employer's obligation to pay the benefits due to the Participants hereunder but only to the extent of the value of such benefits which have accrued up to the date of the amendment or termination.

(Clayton Decl. Ex. A, § 6.01; Am. Cmplt. ¶¶ 14-15)  Plaintiffs thus allege that if the Plan is amended or terminated, they are entitled to receive the value of the benefits accrued as of that date. (Am. Cmplt. ¶ 15)

II. **THE JOINT VENTURE**

On January 13, 2009, Morgan Stanley and Citigroup formed a joint venture (the "JV") and agreed to contribute certain portions of their brokerage businesses to the JV. (Id. ¶ 16)  As part of the JV agreement, Citigroup planned to transfer all Shearson Transfers to the JV (the "Transfer"). (Id. ¶ 17)  The Transfer would leave the Plan with no participants, as they would become part of the JV. (Id. ¶ 18)  Plaintiffs assert that, as a result, Citigroup effectively

terminated or amended the Plan, triggering application of Section 6.01. (Id.) Under Section 6.01, Citigroup is obligated to "pay the benefits due to the Participants hereunder but only to the extent of the value of such benefits which have accrued up to the date of the amendment or termination." (Id.) Plaintiffs assert that the Plan fails, however, to define the method for determining that value. (Id.)

### III.   THE FIRST AMENDMENT TO THE PLAN

Prior to the Transfer, Citigroup amended the Plan, effective May 29, 2009 (the "First Amendment"). The First Amendment, inter alia, re-designates Shearson Transfers as "MSSB Shearson Transfers," and provides them with the Excess Benefit under the Plan. (Id. ¶ 19) As to the Excess Benefit, the First Amendment provides:

> For any MSSB Shearson Transfer who will attain age 65 in 2009 or later, the amount of such contribution shall equal the projected estimated One-Time Shearson Transfer Supplemental Contribution determined and discounted as of the date of transfer to the MSSB joint venture, using reasonable actuarial assumptions to be set forth in a schedule to the Plan before the first such contribution in 2009.

(Clayton Decl. Ex. B ¶ 2; Am. Cmplt. ¶ 19)

The definition of "Shearson Transfer" was changed as follows:

> The definition of "Shearson Transfer" in Article II is hereby amended by deleting and replacing subsection (2) with the following:
>
>> (2) is continuously employed by an Employer from August 1, 1993 until either (a) the date he or she attains age 65 or (b) the date he or she becomes an MSSB Shearson Transfer, and executes a general release in a form to be determined by the Company.

(Clayton Decl. Ex. B. ¶ 4; Am. Cmplt. ¶ 20) Plaintiffs assert that prior to the adoption of the First Amendment, the Plan did not condition payment of accrued benefits under the Plan on the execution of a release. (Am. Cmplt. ¶ 21)

4

The Amended Complaint further pleads that on June 18, 2009, Citigroup informed the Shearson Transfers that, because of the Transfer, they would not be entitled to receive the Excess Benefit – under the Plan as it existed before the First Amendment – if they were not yet 65.  Citigroup explained, however, that it had amended the Plan to make such a payment possible:

> Under the applicable plan rules, if you are not yet age 65 when you transfer to the joint venture, you will *not* be eligible for the one-time transition contributions.  However, since your transfer to the joint venture does not enable you to continue employment with Citi until age 65, we have changed the terms of the plan so that you still may be eligible to receive the one-time lump-sum payment.
>
> The amount of the lump sum will be based on the projected age-65, one-time transition contribution.  The projected amount will be discounted because: 1.  It will be paid to you prior to age 65 and 2.  It will no longer require you to continue employment either with Citi or Morgan Stanley Smith Barney until age 65.

(Id. ¶¶ 23-24 (emphasis in original))  The Amended Complaint alleges that the June 18, 2009 communication improperly fails to disclose (1) that the First Amendment to the Plan requires that the Discount Factor be based on "reasonable actuarial assumptions"; (2) what those assumptions are; and (3) that the Shearson Transfers "must sign a release in order to receive *any* benefit from the Plan."  (Id. ¶ 25 (emphasis in original))

On or about July 24, 2009, Citigroup sent each eligible Shearson Transfer an individually-tailored benefit statement entitled "Citigroup One-Time Shearson Transition and Accelerated Lump Sum Contribution Calculation" (the "Benefit Statement").  (Id. ¶ 26)  The Benefit Statement sets forth the current amount of each Shearson Transfer's Excess Benefit, the amount of the discounted Excess Benefit, and "the Discount Factor based on age as of 6/1/2009" used by Citigroup to calculate the present value of the Excess Shearson Benefit (the "Discount Factor").  (Id.)  Plaintiffs assert that the Benefit Statement fails to specify what "reasonable actuarial assumptions" Citigroup relied upon in determining the Discount Factor.  (Id.)

5

**IV.     THE RELEASE**

The Benefit Statement contains a "Release of Claims" section (the "Release") listing the claims being released and the following exceptions:

> [T]his release does not (a) waive claims that arise after the date of Employee's execution of this Agreement, (b) release claims Employee has asserted on his or her own behalf in civil litigation that is filed and pending at the time Employee executes this Agreement, (c) release claims asserted on behalf of Employee in a pending class action or collective action that has been certified prior to the time Employee executes this Agreement, or (d) to enforce the provisions of this Agreement.

(Clayton Decl., Ex. M; Am. Cmplt. ¶ 28)

The plain language of the Release – which was signed by all of the Plaintiffs (Am. Cmplt. ¶ 5) – makes clear that Employee claims filed before execution of the Release are not waived. Moreover, because this action was filed on October 23, 2009 – before Plaintiffs signed the Release (id.) – the Release does not waive any Plaintiff's right to challenge the Committee's Excess Benefit determination.

**V.     THE SECOND AMENDMENT TO THE PLAN**

On October 21, 2009, after Plan participants requested that Citigroup clarify the method used to determine the Discount Factor, and after several Plan participants had filed formal claims with the Committee concerning the Discount Factor, Citigroup issued another amendment to the Plan (the "Second Amendment"). (Id. ¶ 39) The Second Amendment provides in part:

> Citi determined that for purposes of determining the reasonable actuarial assumptions to be used to establish the reduction factors, the primary factors to be considered are the time value of money and the effect of the elimination of the requirement that a MSSB Shearson Transfer remain employed by Citi or the Morgan Stanley Smith Barney Joint Venture until age 65.

(Id. ¶ 41)  The Second Amendment sets forth a "Schedule of Reduction Factors" and provides that Citigroup will apply those factors in determining the Excess Benefit.  (Id. ¶ 46)

The Amended Complaint asserts that neither the Plan nor the First Amendment requires any Shearson Transfer to be employed by the JV until age 65.  (Id. ¶¶ 42-43)  The Amended Complaint further asserts that the reduction schedule is inadequate because it does not specify the "reasonable actuarial assumptions" underlying the reduction factors.  (Id. ¶ 48)

## VI.  EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE PLAN

Section 7.01 of the Plan provides:

> ***Initial Benefit Determination***.  Claims for benefits under the Plan may be filed with the Committee on forms supplied by the Company.  Written notice of the disposition of a claim shall be furnished to the claimant within ninety (90) days after the application is filed.  In the event the claim is denied, the reason for the denial shall be specifically set forth in the notice in language calculated to be understood by the claimant, pertinent provisions of the Plan shall be cited, and, where appropriate, an explanation as to how the claimant can perfect the claim will be provided.  In addition, the claimant shall be furnished with an explanation of the Plan's claim review procedure.

(Clayton Decl., Ex. A, § 7.01; Am. Cmplt. ¶ 32)

Section 7.02 provides for an appeal of an adverse benefit determination:

> ***Appeal of Adverse Benefit Determinations***.  Any employee, former employee, or beneficiary of either, who has been denied a benefit by a decision of the Committee pursuant to Section 7.01 shall be entitled to request that the Committee give further consideration to his or her claim by filing with the Committee a request for a claim review in accordance with the Plan's procedures. Such request, together with a written statement of the reasons why the claimant believes his or her claim should be allowed, shall be filed with the Committee no later than the first available meeting date of the Committee following the Plan's receipt of a request for review; provided; however, any request for review that is filed within 30 days preceding any such meeting date shall be decided at the second available meeting date.  The Committee shall hold regularly scheduled meetings at least quarterly.  If special circumstances require a further extension of time for processing, a benefit determination shall be rendered not later than the third available meeting date of the Committee following receipt of a request for review; provided, the claimant shall receive written notice prior to the

> commencement of the extension that describes the special circumstances and the dates as of which the benefit determination will be made.

(Clayton Decl., Ex. A, § 7.02; Am. Cmplt. ¶ 33 (emphasis in original))

Three plaintiffs in this action, Daniel C. Quigley, Joseph Durso, and William M. Hiden, filed claims with the Committee challenging the Discount Factor as unreasonable. (Am. Cmplt. ¶ 34) The Committee began processing those claims on September 22 and 23, 2009. (Id.) The other Plaintiffs have not filed administrative claims. (Id.)

Plaintiffs filed this action on October 23, 2009. The Amended Complaint sets forth eight causes of action and requests various forms of declaratory and injunctive relief, including that the Court declare the appropriate Discount Factor to be 5%, and enjoin Defendants from enforcing the Release. (Am. Cmplt., Prayer for Relief)

## DISCUSSION

### I.  MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the

claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

Here, the Amended Complaint cites to the Plan, the First and Second Amendments to the Plan, and the Release. Accordingly, the Court will consider all of these documents in connection with Defendants' motion to dismiss.

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.    Applicable Law

"ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation." Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 219 (2d Cir. 2006); see also Burke v. Pricewaterhouse Coopers LLP Long Term Disability Plan, 572 F.3d 76, 79 n.3 (2d Cir. 2009); Kesselman v. Rawlings Co., LLC, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009) ("[T]he federal courts – including this Circuit – have recognized a 'firmly established federal policy

9

favoring exhaustion of administrative remedies in ERISA cases.'" (quoting Paese v. Hartford Life & Acc. Ins. Co., 449 F.3d 435, 443 (2d Cir. 2006))).

The Second Circuit has stated that the exhaustion requirement serves several important purposes, including to:

> "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo."

Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) (quoting Denton v. First Nat'l Bank of Waco, Texas, 765 F.2d 1295, 1300 (5th Cir. 1985), reh'g denied, 772 F.2d 904 (5th Cir. 1985)).

Because the exhaustion requirement serves these important purposes, courts have recognized only a "narrow exception" to it. Stevenson v. The Bank of New York Co. Inc., 2009 WL 919442, at *5 (S.D.N.Y. March 26, 2009). Exhaustion of administrative remedies is excused only where a claimant has made "a 'clear and positive showing' . . . that it would be futile for the claimant to pursue her claim through the internal claims process." Eastman Kodak, 452 F.3d at 219 (quoting Jones v. UNUM Life Ins. Co., 223 F.3d 130, 140 (2d Cir. 2000)); see Kennedy, 989 F.2d at 594 ("[w]here claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement" (citations omitted)). The standard for demonstrating futility is "very high," Griefenberger v. Hartford Life Ins. Co., 2003 WL 22990093, at *5 (S.D.N.Y. 2003), aff'd, 131 Fed. Appx. 756 (2d Cir. 2005), and Plaintiffs seeking to make such a showing face a "heavy burden," Cole v. Travelers Ins. Co., 208 F. Supp. 2d 248, 262 (D. Conn. 2002):

> "The threshold for this exception is high; a plaintiff should not be allowed to take advantage of the exception unless there is an unambiguous application for benefits and a formal or informal administrative decision denying benefits such that it is clear that seeking further administrative review of the decision would be futile."

Stevenson, 2009 WL 919442, at *5 (quoting Patterson v. J.P. Morgan Chase & Co., No. 01 Civ. 7513, 2002 WL 207123, at *3 (S.D.N.Y. Feb. 11, 2002)).

Where a plan participant or beneficiary has not exhausted his or her administrative remedies, a plan defendant is entitled to dismissal or summary judgment. See Siemionko v. Building Serv. 32B-J Benefit Funds, No. 07-CV-1548, 2009 WL 3171955, at *15 (E.D.N.Y. Sept. 30, 2009) (granting summary judgment where plaintiff failed to exhaust administrative remedies); Scarangella v. Group Health, Inc., No. 05 Civ. 5298, 2009 WL 764454, at *9 (S.D.N.Y. Mar. 24, 2009) (same); see also Kesselman, 668 F. Supp. 2d at 609 (granting motion to dismiss where plaintiff failed to exhaust administrative remedies); Egan v. Marsh & McLennan Cos., Inc., No. 07 Civ. 7134, 2008 WL 245511, at *10 (S.D.N.Y. Jan. 30, 2008) (same).

### B. Analysis

Plaintiffs make two arguments in response to Defendants' claim that they failed to exhaust their administrative remedies. Plaintiffs first contend that the Plan, as amended in 2009, no longer requires exhaustion. (Pltf. Br. 3-11) In the event that the Court concludes that the Plan still requires exhaustion, Plaintiffs argue that that requirement should be excused here, because the Plan's claim procedures are unreasonable, and therefore unenforceable. (Id. at 11-16) Neither of Plaintiffs' arguments is persuasive.

Here, it is clear that the Plan contains comprehensive administrative claim procedures requiring participants to file initial claims with the Committee and appeal adverse

benefit determinations.  (See Clayton Decl., Ex. A, §§ 7.01, 7.02)  Indeed, the Amended Complaint quotes at length from these provisions, and asserts that "[i]n order to comply with the Plan's Claims Procedure, at least three of the Plaintiffs in this action . . . filed claims [in September 2009] with the Committee challenging the Discount Factor as unreasonable."  (Am. Cmplt. ¶¶ 32-34; Clayton Decl., Exs. J, K, L)  Now, in an argument that directly contradicts the allegations of the Amended Complaint, Plaintiffs contend that the May 29, 2009 First Amendment eliminated any exhaustion requirement.  (Pltf. Br. 4)

        This Court finds no evidence that the First Amendment, or any other Plan document, has eliminated the requirement to exhaust the claims procedures quoted above.  Indeed, the First Amendment does not address the Plan's claim procedures.  (See Clayton Decl., Ex. B)

        Plaintiffs' futility argument is likewise misplaced.  Plaintiffs appear to be arguing that they were forced to sign the Release – and thereby forfeit their right to pursue administrative claims and a subsequent court action – in exchange for the Excess Benefit payment offered by the Committee.  In signing the Release, however, Plaintiffs gave up no such rights.

        Signing the Release is a condition for receiving the Excess Benefit payment (see Clayton Decl., Ex. M), but the Release does not affect Plaintiffs' right to pursue the claims set forth in this action.  While the Release operates as a waiver of certain claims, it explicitly exempts "claims Employee has asserted on his or her own behalf in civil litigation that is filed and pending at the time Employee executes this [Release]."  Here, Plaintiffs filed this action before they executed the Release.  (Am. Cmplt. ¶ 5)  Accordingly, Plaintiffs preserved their right to litigate issues addressed in this action, both in the administrative process and on judicial review of the administrative determination.

Plaintiffs have failed to "make a 'clear and positive showing' of futility," Saladin v. Prudential Ins. Co. of Am., 337 F. App'x 78, 80 (2d Cir. 2009) (quoting Eastman Kodak, 452 F.3d at 219), and have not demonstrated that rejection of their administrative claims – based upon their execution of the Release – is a "foregone conclusion."  See Saladin, 337 F. App'x at 80.[1]  Accordingly, Plaintiffs are required to exhaust their administrative remedies.

---

[1] Throughout this litigation, Defendants have repeatedly represented to this Court that there is no impediment to Plaintiffs' pursuit of their claims in the administrative process.  Defendants have further represented that a dismissal of this action will not interfere with Plaintiffs' pursuit of their administrative claims under the Plan or resort to judicial review in the event of an adverse determination from the Committee.  (See Clayton Decl., Ex. N at 3, Def. Br. 4, Def. Reply Br. 4-5)

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Amended Complaint is dismissed without prejudice. The Clerk of the Court is directed to terminate the motion (Dkt. No. 12) and to close this case.

Dated:   New York, New York
         March 29, 2011

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge